23STCV02655

Assigned for all purposes to: Spring Street Courthouse, Judicial Officer:

Electronically FILED by Superior Court of California, County of Los Angeles on 02/07/2023 11:49 AM David W. Slayton, Executive Officer/Clerk of Court, by G. Carini,Deputy Clerk

JONES DAY
Tyrone R. Childress, Bar No. 136795
tchildress@jonesday.com
Amanda P. Ellison, Bar No. 294897
apellison@jonesday.com
Christine E. Cheung, Bar No. 335629
cecheung@jonesday.com
Quinten A. Levin, Bar No. 341041
qlevin@jonesday.com
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071
Telephone: (213) 489-3939
Facsimile: (213) 243-2539

Jason B. Lissy, Esq.
(*Pro Hac Vice Forthcoming*)
jlissy@jonesday.com
250 Vesey Street
New York, NY 10281-1047
Telephone: (212) 326-3939
Facsimile: (212) 755-7306|

Attorneys for Plaintiff University of Southern California

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, STANLEY MOSK COURTHOUSE

| | |
|---|---|
| UNIVERSITY OF SOUTHERN CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>ACE AMERICAN INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, PACIFIC EMPLOYERS INSURANCE COMPANY, PACIFIC INDEMNITY COMPANY, WESTCHESTER FIRE INSURANCE COMPANY,<br><br>Defendants. | Case No. 23STCV02655<br><br>**UNIVERSITY OF SOUTHERN CALIFORNIA'S COMPLAINT FOR DECLARATORY RELIEF AND BREACH OF CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, the University of Southern California ("USC"), complains of defendants (collectively, the "Chubb Insurance Companies"), and each of them, and alleges:

**NATURE OF THE ACTION**

1.      Founded in 1880, USC is California's oldest and one of the world's leading private research universities, as well as one of the largest private employers in the city of Los Angeles.

2.      With this declaratory judgment and breach of insurance contract action, USC seeks many millions of dollars in insurance coverage that the Chubb Insurance Companies continue to improperly withhold in connection with numerous lawsuits filed against USC regarding the alleged misconduct of former USC student health center gynecologist Dr. George Tyndall.

3.      From 1989 through 2018, USC purchased comprehensive liability insurance policies from the Chubb Insurance Companies for significant premiums.  The policies were designed to cover the risk of alleged university negligence in connection with misconduct by its employees, such as presented in the case of Dr. Tyndall.

4.      Yet, when called upon to fulfill the contractual promises and deliver the coverage that their insurance policies provide, the Chubb Insurance Companies abandoned USC in connection with the Dr. Tyndall claims.  As a result, USC has been forced to devote hundreds of millions of dollars of its own funds to defend and resolve these claims, nearly all of which have now been resolved.

5.      However, to this day, the Chubb Insurance Companies continue to attempt to avoid their clear coverage obligations for the Dr. Tyndall claims.  Notwithstanding repeated requests from USC that they do so, the Chubb Insurance Companies refuse to withdraw unreasonable coverage positions for the Dr. Tyndall claims that remain contrary to the facts, applicable law and, in certain instances, the coverage determinations of other insurance companies whose policies contain identical language.

6.      At the same time, the Chubb Insurance Companies have attempted to manufacture roadblocks to the completion of their claim adjustment process.  Despite having been provided for years with more than sufficient claim support from USC to confirm coverage for the Dr. Tyndall claims, the Chubb Insurance Companies have maintained multiple meritless positions that they

- 2 -

contend somehow prevent or excuse them from honoring their contractual obligations owed to USC under the Chubb Policies (as defined below).

7. The Chubb Insurance Companies' continued gamesmanship and breach of their clear contractual obligations have therefore required USC to commence this action to enforce its rights under the Chubb Policies.

## THE PARTIES

8. Plaintiff USC, located in Los Angeles, California, is a non-profit corporation controlled by a Board of Trustees and organized under the laws of the State of California.

9. Upon information and belief, Defendant ACE American Insurance Company is an insurance company doing business in California and is a company formed under the laws of Pennsylvania with its principal place of business in Philadelphia County, Pennsylvania.

10. Upon information and belief, Defendant Federal Insurance Company is an insurance company doing business in California and is a company formed under the laws of Indiana with its principal place of business in Hunterdon County, New Jersey.

11. Upon information and belief, Defendant Pacific Employers Insurance Company is an insurance company doing business in California and is a company formed under the laws of Pennsylvania with its principal place of business in Philadelphia County, Pennsylvania.

12. Upon information and belief, Defendant Pacific Indemnity Company is an insurance company doing business in California and is a company formed under the laws of Wisconsin with its principal place of business in Hunterdon County, New Jersey.

13. Upon information and belief, Defendant Westchester Fire Insurance Company is an insurance company doing business in California and is a company formed under the laws of Pennsylvania with its principal place of business in Philadelphia County, Pennsylvania.

14. Defendants ACE American Insurance Company, Federal Insurance Company, Pacific Employers Insurance Company, Pacific Indemnity Company and Westchester Fire Insurance Company are collectively referred to herein as the "Chubb Insurance Companies."

**JURISDICTION AND VENUE**

15.     USC incorporates the foregoing allegations herein by reference.

16.     The Court has subject matter jurisdiction over this case, because the amount in controversy, exclusive of interest and costs, exceeds the Court's minimum jurisdictional limits.

17.     The Court has personal jurisdiction over each of the Chubb Insurance Companies because, as more specifically alleged below, the Chubb Insurance Companies submitted to jurisdiction in California by conducting business in California, insuring risks located in California, and making contracts substantially connected with California.  In particular, the Chubb Insurance Companies issued and delivered the subject insurance policies to USC in Los Angeles County, and the Chubb Insurance Companies have corresponded with USC regarding the subject insurance claims in Los Angeles County.

18.     Venue is proper in this Court pursuant to California Code of Civil Procedure Section 395.5 because various transactions, acts, events and occurrences giving rise to this Complaint took place within Los Angeles County.

**FACTUAL BACKGROUND**

**A.     USC**

19.     Founded in 1880, USC is California's oldest and one of the world's leading private research universities.

20.     As a non-profit corporation and one of the largest private employers in the city of Los Angeles, USC supports over 40,000 jobs in Los Angeles County, including a faculty of approximately 4,000 distinguished scholars, researchers and teachers.

21.     USC's diverse curricular offerings provide extensive opportunities for interdisciplinary study and collaboration with leading researchers in highly advanced learning environments, which enable USC to educate its students through a broad array of programs.

**B.     The Underlying Tyndall Claims**

22.     Beginning in May 2018, following news coverage in the *Los Angeles Times*, hundreds of students filed lawsuits against USC and its Board of Trustees in California state and

- 4 -

federal courts stemming from the alleged misconduct of former USC student health center gynecologist, Dr. George Tyndall (collectively, the "Underlying Tyndall Claims").

23.     The Underlying Tyndall Claims alleged that USC and its Board of Trustees were negligent in hiring and supervising Dr. Tyndall.  Dr. Tyndall's broad ranging misconduct is alleged to include sexual and physical abuse and molestation, sexual harassment, false imprisonment, civil rights violations and violations of Title IX.

24.     As of the filing of this Complaint, five class action complaints have been filed in federal court by approximately 50 named plaintiffs on behalf of all female patients seen for treatment by Dr. Tyndall during his tenure at USC, as more specifically defined in the consolidated actions.  In addition, approximately 129 complaints have been filed in California state court brought by approximately 770 plaintiffs.

25.     Since 2018, USC has defended against the Underlying Tyndall Claims with the Chubb Insurance Companies failing to provide any support.

26.     In October 2018, USC reached a $215 million class-wide settlement of the Underlying Tyndall Claims asserted by the federal class action plaintiffs, which received court approval and has been allocated by Special Masters among the class members pursuant to procedures set forth in the settlement agreement.

27.     In July 2021, USC agreed to pay $842.4 million as part of a settlement to resolve 702 Underlying Tyndall Claims asserted by the state court plaintiffs, which has been allocated to the 702 individual claimants by third-party neutral allocators, Judges Gail Andler and William Bettinelli.

28.     At the present time, USC continues to defend against one remaining Underlying Tyndall Claim pending in California state court.

**C.     The Chubb Policies**

29.     Over the period implicated by the Underlying Tyndall Claims, USC paid substantial premiums to purchase comprehensive liability insurance policies from the Chubb

- 5 -

Insurance Companies (or their predecessors-in-interest) for the benefit of USC and its Board of Trustees (collectively, the "Chubb Policies").

30.     While physical attachment to this Complaint of the Chubb Policies would be impractical due to the number of policies at issue and their size, the policy numbers and policy periods for the Chubb Policies are set forth in Exhibit A hereto, which are incorporated by reference.  Moreover, on information and belief, the Chubb Insurance Companies have copies of the Chubb Policies at issue, which shall be made a part of the record during the course of this action.

31.     The following discussion of relevant policy terms is grouped according to the Chubb Policies sold to USC as primary layer insurance and those sold to USC as excess layer insurance.

**1.      The Chubb Primary General Liability Policies**

32.     For the September 1, 2001 through September 1, 2004 period, USC purchased three primary general liability insurance policies from the Chubb Insurance Companies: Excess Commercial General Liability Policy Nos. XSL G2029470A sold by Pacific Employers Insurance Company for the September 1, 2001 to September 1, 2002 and September 1, 2002 to September 1, 2003 policy periods (the "Pacific Primary GL Policies"); and Excess Commercial General Liability Policy No. XSL G20590270R sold by ACE American Insurance Company for the September 1, 2003 to September 1, 2004 policy period (the "ACE Primary GL Policy," together with the Pacific Primary GL Policies, the "Chubb Primary GL Policies").

33.     By endorsement, the Chubb Primary GL Policies each provide express "Abuse and Molestation" coverage for "'bodily injury,' 'property damage,' 'personal injury,' and advertising injury' arising from the physical or sexual abuse of any person during the term of this endorsement while such person is in the care, custody or control of any insured."

34.     The express "Abuse or Molestation" coverage afforded by Chubb Primary GL Policies is subject to the following "Each Person" and aggregate limits of liability:

- 6 -

- Pacific Primary GL Policy No. XSL G2029470A (September 1, 2001 to September 1, 2002): "$500,000 Each Person Limit" and "$2,000,000 Abuse or Molestation Aggregate Limit";

- Pacific Primary GL Policy No. XSL G2029470A (September 1, 2002 to September 1, 2003): "$1,000,000 Each Person Limit" and "$2,000,000 Abuse or Molestation Aggregate Limit"; and

- ACE Primary GL Policy No. XSL G20590270R (September 1, 2003 to September 1, 2004): "$1,000,000 Each Person Limit" and "$1,000,000 Abuse or Molestation Aggregate Limit."

2.      **The Chubb Excess Liability Policies**

     a.      **The Chubb Excess General Liability Policies**

         i.      **The Pacific Indemnity Excess GL Policy**

35.     For the September 1, 1988 to September 1, 1989 policy period, USC purchased Commercial Excess Liability Policy No. (89)7928-05-84 from Pacific Indemnity Company (the "Pacific Excess GL Policy").

36.     Subject to its other terms, conditions and specified retained limits, the Pacific Excess GL Policy covers, among other things, the defense and indemnification of claims alleging bodily injury and personal injury which occurs during the policy period and which is caused by a covered occurrence.

         ii.     **The Industrial Indemnity Umbrella Liability Policies**

37.     For the September 1, 1988 to September 1, 1995 period, USC purchased the following umbrella liability insurance policies (collectively, the "Industrial Indemnity Umbrella Policies"):

- Commercial Umbrella Liability Policy No. ZS910-4547 for the September 1, 1988 to September 1, 1989 policy period sold by Industrial Underwriters Insurance Company of Dallas, Texas;

- Commercial Umbrella Liability Policy No. ZS910-6995 for the September 1, 1989 to September 1, 1990 policy period sold by Industrial Underwriters Insurance Company of Dallas, Texas;

- Commercial Umbrella Liability Policy No. ZS910-8416 for the September 1, 1990 to September 1, 1991 policy period sold by Industrial Underwriters Insurance Company of Dallas, Texas;

- Commercial Umbrella Liability Policy No. ZS910-9979 for the September 1, 1991 to September 1, 1992 policy period sold by Industrial Underwriters Insurance Company of Dallas, Texas;

- Commercial Umbrella Liability Policy No. ZS912-4242 for the September 1, 1992 to September 1, 1993 policy period sold by Industrial Indemnity Company of San Francisco, California;

- Commercial Umbrella Liability Policy No. ZS913-2712 for the September 1, 1993 to September 1, 1994 policy period sold by Industrial Indemnity Company; and

- Commercial Umbrella Liability Policy No. CUL-250085 for the September 1, 1994 to September 1, 1995 policy period sold by Industrial Underwriters Insurance Company (collectively with Industrial Underwriters Insurance Company of Dallas, Texas, Industrial Indemnity Company of San Francisco, California, and Industrial Indemnity Company, "Industrial Indemnity").

38.     Pursuant to the terms of an Assumption and Indemnity Reinsurance Agreement, the Industrial Indemnity Umbrella Policies were transferred to the Westchester Fire Insurance Company ("Westchester"), as a result of which Westchester became the successor-in-interest to Industrial Indemnity, and direct insurer of USC, under the Industrial Indemnity Umbrella Policies.

39.     Subject to their other terms, conditions and specified retained limits, the Industrial Indemnity Umbrella Policies cover, among other things, the defense and indemnification of claims alleging bodily injury and personal injury which occurs during the policy period and which is caused by a covered occurrence.

### iii.     The Federal Excess GL Policies

40.     From the September 1, 1989 to May 1, 2007 period, USC purchased the following excess general liability insurance policies from Federal Insurance Company (respectively, the "Federal Excess GL Policies"):

- Commercial Excess Liability Policy No. (90)7928-05-84 for the September 1, 1989 to September 1, 1990 policy period;

- Commercial Excess Liability Policy No. (91)7928-05-84 for the September 1, 1990 to September 1, 1991 policy period;

- Commercial Excess Liability Policy No. (92)7928-05-84 for the September 1, 1991 to September 1, 1992 policy period;

- 8 -

- Commercial Excess Liability Policy No. (93)7928-05-84 for the September 1, 1992 to September 1, 1993 policy period;

- Commercial Excess Liability Policy No. (94)7928-05-84 for the September 1, 1993 to September 1, 1994 policy period;

- Commercial Excess Liability Policy No. (95)7928-05-84 for the September 1, 1994 to September 1, 1995 policy period;

- Commercial Excess Liability Policy No. (96)7928-05-84 for the September 1, 1995 to September 1, 1996 policy period;

- Commercial Excess Liability Policy No. (97)7928-05-84 for the September 1, 1996 to September 1, 1997 policy period;

- Commercial Excess Liability Policy No. 7928-05-84 MTO for the September 1, 1999 to September 1, 2000 policy period;

- Commercial Excess Liability Policy No. 7928-05-84 MTO for the September 1, 2000 to September 1, 2001 policy period;

- Commercial Excess Liability Policy No. 7928-05-84 DTO for the September 1, 2001 to September 1, 2002 policy period;

- Commercial Excess Liability Policy No. 7928-05-84 for the September 1, 2004 to September 1, 2005 policy period; and

- Commercial Excess Liability Policy No. 7928-05-84 for the May 1, 2006 to May 1, 2007 policy period.

41.    Subject to their other terms, conditions and specified retained limits, the Federal Excess GL Policies cover, among other things, the defense and indemnification of claims alleging bodily injury and personal injury which occurs during the policy period and which is caused by a covered occurrence.

### iv.    The Westchester Excess GL Policies

42.    For the May 1, 2010 to May 1, 2011 and May 1, 2012 to May 1, 2013 policy periods, USC purchased the following excess general liability insurance policies from the Chubb Insurance Companies:  Excess Insurance Policy No. G24069400002 and ACE Catastrophe Liability Plus Policy No. G24069400004 sold by the Westchester Fire Insurance Company (the "Westchester Excess GL Policies," collectively with the Pacific Excess GL Policy, Federal Excess GL Policies and Industrial Indemnity Umbrella Policies, the "Chubb Excess GL Policies").

- 9 -

43.     Subject to their other terms, conditions and specified retained limits, the Westchester Excess GL Policies cover, among other things, the defense and indemnification of claims alleging bodily injury and personal injury which occurs during the policy period and which is caused by a covered occurrence.

**b.     The Chubb Excess EPL Policy**

44.     USC purchased from ACE American Insurance Company broad non-profit directors and officers liability, employment practices liability, and employee benefit plan fiduciary liability insurance in the form of Excess Liability Insurance Policy No. DOX G28137825 002 for the July 1, 2017 to July 1, 2018 policy period (the "Chubb Excess EPL Policy"). By endorsement, the Chubb Excess EPL Policy is subject to a six-year run-off period through July 1, 2024.

45.     The Chubb Excess EPL Policy provides an aggregate limit of liability of $5 million for "all Loss under all Coverages combined," which attaches in excess of the $20 million underlying limit of liability of AIG PortfolioSelect for Non-Profit Organizations Primary Policy No. 01-602-08-76, to which the Chubb Excess EPL Policy generally follows form (the "Followed AIG Primary EPL Policy").

46.     Subject to its other terms and conditions, the Followed AIG Primary EPL Policy's "Employment Practices Liability" coverage section provides, among other things, express coverage for all "Loss" to USC arising from "Third Party Violation" claims.

47.     The Followed AIG Primary EPL Policy defines "Loss," in relevant part, to include "damages, settlements, judgments . . . and Defense Costs [defined, in relevant part, as "reasonable and necessary fees, costs and expenses consented to by the Insurer"]," as well as "any attorney fees . . . which the Insurer has agreed to pay as part of a covered settlement."

48.     The Followed AIG Primary EPL Policy defines "Third Party Violation" as "any actual or alleged harassment or unlawful discrimination . . . or the violation of the civil rights of an individual relating to such harassment or discrimination, when such acts are alleged to be committed against any individual other than an Insured Person or applicant for employment

- 10 -

within the Organization . . . including, but not limited to, students, patients, members, customers, vendors and suppliers."

49.     While the Followed AIG Primary EPL Policy's "Employment Practices Liability" coverage section is subject to a "Bodily Injury and Property Damage" exclusion, the exclusion contains an express exception and "shall not apply to that portion of a Claim which constitutes . . . a Third Party Violation Claim, other than . . . a Third Party Violation Claim alleging any Sexual Misconduct."

50.     The Followed AIG Primary EPL Policy defines "Sexual Misconduct," as "any licentious, immoral or sexual behavior intended to lead to or culminating in any sexual act against any individual(s), including, without limitation, sexual abuse, sexual assault or molestation."

**D.      The Chubb Insurance Companies' Wrongful Breach of Their Policies**

51.     USC timely provided notice of the Underlying Tyndall Claims to the Chubb Insurance Companies under the Chubb Policies.

52.     Since then, and for the past several years, USC has continued to share extensive information and documentation with the Chubb Insurance Companies regarding the Underlying Tyndall Claims submitted for coverage under the Chubb Policies, including but not limited to, underlying complaints, claim forms, fact sheets, supplemental fact sheets, mediation materials, written discovery, document productions, deposition transcripts, settlement demands and settlement agreements in the federal and state court lawsuits.

53.     As part of this information exchange, the Chubb Insurance Companies refused for many months to execute the confidentiality agreement acknowledgment required in order for USC to disclose individual claimant settlement allocations for the Underlying Tyndall Claims. Contrary to the positions of other USC insurance companies in connection with the Underlying Tyndall Claims, the Chubb Insurance Companies insisted that they were unable to execute the confidentiality agreement acknowledgment based upon purported insurance regulatory concerns.

54.     Only after USC secured an amendment to the confidentiality agreement at the Chubb Insurance Companies' demand did the Chubb Insurance Companies agree to accept

- 11 -

1  individual claimant settlement allocations for the Underlying Tyndall Claims. However, the

2  Chubb Insurance Companies insisted that such settlement allocations be anonymized and

3  provided subject to specifications approved by the Chubb Insurance Companies, with which USC

4  complied at considerable time and expense.

5       55.    Despite having been provided for years with more than sufficient claim support

6  from USC to confirm coverage for the Underlying Tyndall Claims, ironically, the Chubb

7  Insurance Companies now contend that the restrictions they have unilaterally imposed on

8  information exchanges for the Underlying Tyndall Claims due to their purported regulatory

9  concerns somehow prevent and excuse the completion of their claims adjustment.

10       56.    At the same time, and as set forth below, the Chubb Insurance Companies continue

11  to withhold coverage from USC under the Chubb Policies on the basis of meritless coverage

12  positions that remain contrary to the facts, applicable law and, in certain instances, the coverage

13  determinations of other insurance companies whose policies contain identical language.

14      **1.**    **The Chubb Insurance Companies' Wrongful Breach of the Chubb Primary**

15             **GL Policies**

16       57.    The Chubb Insurance Companies continue, without any legitimate basis, to

17  withhold from USC $5 million in coverage for the Underlying Tyndall Claims due and owing

18  under the express "Abuse and Molestation" coverage of the Chubb Primary GL Policies.

19       58.    The Chubb Insurance Companies erroneously maintain that the "Abuse and

20  Molestation" coverage of the Chubb Primary GL Policies is subject to purported "retained limits"

21  of between $500,000 and $750,000 applicable to each Underlying Tyndall Claim.

22       59.    However, as USC has previously and repeatedly explained to the Chubb Insurance

23  Companies, including in correspondence dating back to June 26, 2020, there is no retained limit

24  applicable to the "Abuse and Molestation" coverage of the Chubb Primary GL Policies. In that

25  regard, the "Abuse and Molestation" endorsements state that "[t]he insurance provided by this

26  endorsement is subject to the following limits," and identifies only an "Each Person Limit" and

27  the "Abuse and Molestation Aggregate Limit." In contrast to other additional coverage

28  endorsements contained in the Chubb Primary GL Policies (e.g., Liquor Liability, Employee

- 12 -

1   Benefits Liability, Innkeeper's Liability), the "Abuse and Molestation" endorsements do not

2   identify any "retained limit" as an applicable limit.

3         60.    USC has also repeatedly explained to the Chubb Insurance Companies that, in

4   addition to being erroneous, such "retained limit" defenses are, in any event, mooted by the

5   liabilities that USC has incurred for the Underlying Tyndall Claims applicable to the Chubb

6   Primary GL Policies' policy periods.

7         61.    Specifically, as set forth in letters dated June 26, 2020, April 13, 2022, November

8   28, 2022 and January 4, 2023, USC has demonstrated to the Chubb Insurance Companies that the

9   individual settlement amounts for the Underlying Tyndall Claims applicable to the Chubb

10  Primary GL Policies' policy periods, as well as tens of millions of dollars in related defense costs

11  for those claims, that USC has incurred vastly exceed the available limits of the Chubb GL

12  Primary Polices.

13        62.    Moreover, even if as Chubb incorrectly maintains, the "Abuse of Molestation"

14  coverage were subject to a "retained limit" (which it is not) and that "retained limit" applied

15  separately to each Underlying Tyndall Claim (which, again, it does not), the $5 million aggregate

16  limit of the Chubb Primary GL Policies' "Abuse and Molestation" coverage would still be

17  exhausted by the Underlying Tyndall Claims which allege misconduct within the applicable

18  policy periods of the Chubb Primary GL Policies.[1]

19        63.    Nevertheless, the Chubb Insurance Companies continue to improperly withhold

20  coverage from USC under the Chubb Primary GL Policies, contending that the same anonymized

21  settlement allocations they insisted upon receiving in light of their own purported regulatory

22  concerns do not provide "sufficient detail to establish coverage under the Pacific Policies."

23        64.    At the same time, the Chubb Insurance Companies continue to deny coverage for

24  the Underlying Tyndall Claims under the ACE Primary GL Policy on account of a purported

25  "Medical Malpractice and Professional Services" exclusion, which excludes coverage for "any

26  ───────────────
    [1] The details of individual settlement allocations for the Underlying Tyndall Claims remain
27  subject to applicable confidentiality agreements and have been disclosed to the Chubb Insurance
    Companies pursuant to, and following the Chubb Insurance Companies' execution of, such
28  agreements.

                                    - 13 -

liability arising out of . . . [t]he providing or failing to provide . . . medical . . . treatment, advice, or instruction" or "[a]ny health or therapeutic service, treatment, advise or instruction," a "Designated Professional Services" exclusion, which excludes coverage for bodily injury "due to the rendering of or failure to render any professional service" and a "Professional Liability Exclusion," which excludes coverage for "any liability arising out of the providing or failing to provide any services of a professional nature."

65.     However, USC has also previously explained to the Chubb Insurance Companies, including in correspondence dated June 26, 2020, April 13, 2022 and January 4, 2023, that the Underlying Tyndall Claims include allegations of injuries caused by abuse, sexual harassment and assault, which courts have uniformly held fall outside of the scope of such exclusions, as they are not acts requiring the special acumen and training of medical professionals.  USC has also further explained to the Chubb Insurance Companies that the fact that a medical appointment may have provided occasion for the alleged injury is immaterial, as the mere physical setting of an injury is insufficient to trigger a medical or professional services exclusion.  USC has also explained to the Chubb Insurance Companies that alleged negligence in preventing abuse is also not a medical or professional service.

66.     Nevertheless, the Chubb Insurance Companies continue to maintain their erroneous denial of coverage for the Underlying Tyndall Claims under the ACE Primary GL Policy.

**2.     The Chubb Insurance Companies' Wrongful Breach of the Chubb Excess GL Policies**

67.     The Chubb Insurance Companies also continue to improperly withhold from USC millions of dollars in coverage for the Underlying Tyndall Claims due and owing under the Chubb Excess GL Policies.

68.     The Chubb Insurance Companies have erroneously denied coverage under the Chubb Excess GL Policies on the basis of purported medical professional services exclusions, which, for each of the reasons discussed above, do not apply to the Underlying Tyndall Claims.

- 14 -

69.     The Chubb Insurance Companies have also attempted to contend that the same anonymized settlement allocation information they insisted upon receiving in light of their own purported regulatory concerns does not provide sufficient detail to establish coverage under the Chubb Excess GL Policies.

**3.     The Chubb Insurance Companies' Wrongful Breach of the Chubb Excess EPL Policy**

70.     Without support, the Chubb Insurance Companies have inaccurately maintained that all of the Underlying Tyndall Claims "alleged bodily injury" subject to the Followed AIG Primary EPL Policy's "Bodily Injury and Property Damage" exclusion.  The Chubb Insurance Companies have further maintained that the exclusion's exception for "Third Party Violation" claims does not apply, because all of the Underlying Tyndall Claims purportedly arise out of "Sexual Misconduct" as defined by the Followed AIG Primary EPL Policy.

71.     However, as the Chubb Insurance Companies are well aware, their position that the "Bodily Injury and Property Damage" exclusion bars coverage for all of the Underlying Tyndall Claims continues to be directly at odds with AIG's own express acknowledgment of "potential coverage" under the Followed AIG Primary EPL Policy for the dozens of Underlying Tyndall Claims that allege no improper touching – i.e., no bodily injury or "Sexual Misconduct" as defined by the Followed AIG Primary EPL Policy – but otherwise allege covered third party harassment, discrimination, or other civil rights violations (the "Non-Touching Tyndall Claims").

72.     In fact, by correspondence dated August 16, 2022 and October 5, 2022, USC provided the Chubb Insurance Companies with the same representative compilation of Non-Touching Tyndall Claims for which AIG acknowledged "potential coverage" under the "Employment Practices Liability" coverage section of the Followed AIG Primary EPL Policy.

73.     In addition, following the Chubb Insurance Companies' refusal for months to execute the underlying confidentiality agreement governing their disclosure (discussed above), by letter dated November 28, 2022, USC transmitted to the Chubb Insurance Companies the anonymized individual settlement allocation information for Non-Touching Tyndall Claims.

- 15 -

74.     The settlement and defense amounts tendered to the Chubb Insurance Companies for the Non-Touching Tyndall Claims vastly exceed the Chubb Excess EPL Policy's $5 million aggregate limit of liability excess of the Followed AIG Primary EPL Policy's underlying $20 million limits, but the Chubb Insurance Companies continue to improperly withhold payment from USC.

75.     In an attempt to justify their continued unreasonable refusal to indemnify the Non-Touching Tyndall Claims in breach of their coverage obligations under the Chubb Excess EPL Policy, the Chubb Insurance Companies now maintain that the restrictions they have placed on their own claim adjustment process and the anonymized settlement allocation information they insisted upon receiving provide "no way to determine whether these claimants alleged or sustained any physical injuries or improper touching."

### FIRST CAUSE OF ACTION
#### (Declaratory Judgment)

76.     USC repeats and realleges the allegations in paragraphs 1 through 75 as though fully set forth herein.

77.     The Chubb Policies constitute valid and enforceable contracts of insurance between USC and the Chubb Insurance Companies.

78.     USC has timely satisfied all obligations and complied with all conditions applicable under the Chubb Policies, including paying premiums and providing timely notice of its claims.

79.     An actual and justiciable controversy presently exists between USC and the Chubb Insurance Companies regarding their respective rights and obligations, and the availability of coverage, under the Chubb Policies for the Underlying Tyndall Claims.

80.     Given that the parties have an actual and justiciable controversy regarding their respective rights and obligations under the Chubb Policies for the Underlying Tyndall Claims, a declaratory judgment of the parties' respective rights and obligations under the Chubb Policies is necessary.

- 16 -

81.     USC therefore seeks a declaratory judgment in favor of USC and against the Chubb Insurance Companies that:

    a.  the Chubb Insurance Companies have wrongfully refused, failed or disclaimed any responsibility to fulfill their obligations under the Chubb Policies to pay defense costs and indemnify USC against the Underlying Tyndall Claims up to their policy limits;

    b.  USC is immediately entitled to defense and indemnity against the Underlying Tyndall Claims from the Chubb Insurance Companies under the Chubb Policies up to their policy limits; and

    c.  USC is entitled to any other declaratory relief that the Court deems just and proper.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

82.     USC repeats and realleges the allegations in paragraphs 1 through 81 as though fully set forth herein.

83.     The Chubb Policies constitute valid and enforceable contracts of insurance between USC and the Chubb Insurance Companies, and their terms have been triggered to obligate the Chubb Insurance Companies to provide insurance to USC for the Underlying Tyndall Claims.

84.     USC has timely satisfied all obligations and complied with all conditions applicable under the Chubb Policies, including paying premiums and providing timely notice of its claims.

85.     The Chubb Insurance Companies have materially breached their obligations under the Chubb Policies by unreasonably refusing to indemnify USC for the Underlying Tyndall Claims up to their full policy limits.

86.     USC has suffered and continues to suffer damages as a direct and proximate result of the Chubb Insurance Companies' breach of their obligations under the Chubb Policies in excess of the jurisdictional minimum of this Court, with the exact amount to be proven at trial. USC reserves the right to conform its claim for damages consistent with proof at trial.

- 17 -

## PRAYER

WHEREFORE, USC respectfully requests that this Court grant USC the following relief:

A.  Declaratory judgment as set forth in the First Cause of Action above;

B.  Judgment against the Defendant Chubb Insurance Companies and in favor of USC:

    i.  awarding USC all actual and consequential damages it has suffered as a result of the Chubb Insurance Companies' breach of the Chubb Policies;

    ii.  awarding USC all reasonable attorneys' fees and expenses incurred herein and in its pursuit of its coverage rights under the Chubb Policies against the Chubb Insurance Companies, as permitted by law;

    iii.  awarding USC pre-judgment and post-judgment interest at the highest rate allowable by law;

    iv.  awarding USC all costs of suit incurred herein; and

    v.  such other and further relief, both at law and in equity, as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

USC respectfully requests that a jury hear all issues properly submitted to a jury.

- 18 -

Dated: February 7, 2023

Respectfully submitted,

JONES DAY

By: */s/ Tyrone R. Childress*

Tyrone R. Childress, Bar No. 136795
tchildress@jonesday.com
Amanda P. Ellison, Bar No. 294897
apellison@jonesday.com
Christine E. Cheung, Bar No. 335629
cecheung@jonesday.com
Quinten A. Levin, Bar No. 341041
qlevin@jonesday.com
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071
Telephone: (213) 489-3939
Facsimile: (213) 243-2539

Jason B. Lissy, Esq.
(*Pro Hac Vice Forthcoming*)
jlissy@jonesday.com
250 Vesey Street
New York, NY 10281-1047
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

*Attorneys for Plaintiff University of Southern California*

- 19 -

**EXHIBIT A**

| Insurance Company | Policy Number | Start Date | End Date |
|---|---|---|---|
| ACE American Insurance Company | XSL G20590270R | 9/1/2003 | 9/1/2004 |
| ACE American Insurance Company | DOX G28137825 002 | 7/1/2017 | 7/1/2018 |
| Federal Insurance Company | (90)7928-05-84 | 9/1/1989 | 9/1/1990 |
| Federal Insurance Company | (91)7928-05-84 | 9/1/1990 | 9/1/1991 |
| Federal Insurance Company | (92)7928-05-84 | 9/1/1991 | 9/1/1992 |
| Federal Insurance Company | (93)7928-05-84 | 9/1/1992 | 9/1/1993 |
| Federal Insurance Company | (94)79280584 | 9/1/1993 | 9/1/1994 |
| Federal Insurance Company | (95)7928-05-84 | 9/1/1994 | 9/1/1995 |
| Federal Insurance Company | (96)7928-05-84 | 9/1/1995 | 9/1/1996 |
| Federal Insurance Company | (97) 7928-05-84 | 9/1/1996 | 9/1/1997 |
| Federal Insurance Company | 7928-05-84 MTO | 9/1/1999 | 9/1/2000 |
| Federal Insurance Company | 7928-05-84 MTO | 9/1/2000 | 9/1/2001 |
| Federal Insurance Company | 7928-05-84 DTO | 9/1/2001 | 9/1/2002 |
| Federal Insurance Company | 7928-05-84 | 9/1/2004 | 9/1/2005 |
| Federal Insurance Company | 7928-05-84 | 5/1/2006 | 5/1/2007 |
| Industrial Indemnity | ZS910-4547 | 9/1/1988 | 9/1/1989 |
| Industrial Indemnity | ZS910-6995 | 9/1/1989 | 9/1/1990 |
| Industrial Indemnity | ZS910-8416 | 9/1/1990 | 9/1/1991 |
| Industrial Indemnity | ZS9109979 | 9/1/1991 | 9/1/1992 |
| Industrial Indemnity | ZS9124242 | 9/1/1992 | 9/1/1993 |
| Industrial Indemnity | ZS913-2712 | 9/1/1993 | 9/1/1994 |
| Industrial Indemnity | CUL-250085 | 9/1/1994 | 9/1/1995 |
| Pacific Employers Insurance Company | XSL G2029470A | 9/1/2001 | 9/1/2002 |
| Pacific Employers Insurance Company | XSL G2029470A | 9/1/2002 | 9/1/2003 |
| Pacific Indemnity Company | (89)7928-05-84 | 9/1/1988 | 9/1/1989 |
| Westchester Fire Insurance Company | G24069400002 | 5/1/2010 | 5/1/2011 |
| Westchester Fire Insurance Company | G24069400 004 | 5/1/2012 | 5/1/2013 |

- 20 -